## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MANJIT SINGH GILL,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | **No. 21-0999** |
| v. | : | |
| | : | |
| **AVTAR KAUR,** | : | |
| *Defendant.* | : | |

### MEMORANDUM

**KENNEY, J.**                                                     **November 30, 2021**

In March 2021, Plaintiff Manjit Singh Gill brought a breach of contract claim against Defendant Avtar Kaur alleging Defendant's failure to repay Plaintiff pursuant to the terms of a Loan Promissory Note dated June 7, 2015 (Note). ECF No. 1 Exhibit A. Defendant Kaur denies this claim, alleging the Note is a forgery and asserting two counterclaims against Mr. Gill for fraud and attorney's fees. ECF No. 4. Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaims (ECF No. 35) is now before this Court. For the reasons set forth below, this Court finds that Plaintiff's Motion for Summary Judgment as to Defendants Counterclaims (ECF No. 35) is **GRANTED**. All other claims will proceed to a non-jury trial as agreed to by the parties on February 7, 2022.

### I.       BACKGROUND

In June 2015, Mr. Gill and Ms. Kaur were involved in business together. ECF No. 47 Exhibit 4 at p. 30. Although there is some dispute as to the exact timeline,[1] at some point between May

---

[1] Defendant Kaur asserts that both parties were shareholders in AGK as of May 26, 2015. ECF 42 ¶ 2. Plaintiff Gill contends that neither party became a shareholder in AGK until June 16, 2015, at which time the AGK shareholders put their proven equity funds into AGK. ECF No. 48 at p. 11.

2015 and June 2015, Mr. Gill and Ms. Kaur, along with two other individuals—Mr. Jatinder Singh and Mr. Kuljinder Singh—became shareholders in AGK Enterprises, Inc. d/b/a Ken & Chris Package Store (AGK), a Georgia Corporation. In connection with this business venture, Mr. Gill, Ms. Kaur, Mr. Jatinder Singh, and Mr. Kuljinder Singh were involved in AGK's pursuit of a U.S. Small Business Administration loan (SBA loan) from the First Intercontinental Bank (Bank) in order to fund AGK's purchase of a liquor store. ECF No. 4 Counterclaim ¶ 1.

Mr. Gill alleges that prior to providing the SBA loan to AGK, the Bank required guarantees from all shareholders who held a 20% interest or more in AGK and that in light of his 15% shareholder interest, Mr. Gill was not required to personally guarantee the SBA loan. ECF No. 6 ¶ 6. By contrast Ms. Kaur contends that Mr. Gill refused to personally guarantee the SBA loan, thus leaving the other shareholders to do so. ECF No. 4 Counterclaim ¶ 6. Nevertheless, both parties agree that only Ms. Kaur, Mr. Jatinder Singh, and Mr. Kuljinder Singh personally guaranteed the SBA loan, while Mr. Gill did not. ECF No. 6 ¶ 6.

Both parties also agree, that in June 2015, Mr. Gill wired a total of $175,000 into AGK's bank account over the course of four separate payments on June 8, 9, and 11, 2015[2] and that around that same time Mr. Gill provided AGK a check in the amount of $70,000 that was never cashed. ECF No. 4 ¶ 3; ECF No. 6 ¶ 6; ECF No. 6 Exhibit C. The parties starkly disagree, however, as to the circumstances surrounding these funds.

Specifically, Mr. Gill alleges that, in his personal capacity, he loaned Ms. Kaur $160,000 to fund Ms. Kaur's personal purchase of equity in AGK and to enable her to guarantee the SBA loan. Mr. Gill maintains that the $175,000 he wired into the AGK bank account in June 2015

---

[2] A purported copy of AGK's bank records from June 2015 appear to show a $25,000 incoming wire transfer on June 8, 2015, a $50,000 incoming wire transfer on June 9, 2015, and two separate incoming wire transfers for $25,000 and $75,000 on June 11, 2015. ECF No. 6 Exhibit C.

included that $160,000 personal loan and that the nature and terms of this transaction are

documented in the Note dated June 7, 2015. ECF No. 1 ¶ 7; ECF No. 6 ¶ 6; ECF No. 1 ¶ 8; ECF

No. 1 Exhibit A. The Note expressly identifies "Avtar Kaur" as the "Borrower" and "Manjit

Singh [Mr. Gill]" as the "Lender" and contains purported signatures for both parties. ECF No. 1

Exhibit A. In relevant part the Note states:

> This Loan is being used for SBA Cash Injection for the Ken & Chris Package
> Store. Borrower and her partners were short with required Cash injection and
> proof. This is a business loan transaction, not a consumer lending, funds are being
> transferred from Business accounts of Teg Bahadur Corp and Anoop Enterprises
> LLC from PA to GA into First Intercontinental bank per bank instructions, after
> her partner met bank officials on June 5th, 2015 meeting. Borrower acknowledges
> that she must pay back these funds unconditionally to Manjit Singh [Mr. Gill]
> (Lender) personally as they are his business funds and personal funds. Avtar Kaur
> claims she owns Thirty Five (35%) Shares, Out of 100,000 shares in AGK
> Enterprises Inc (Ken and Chris Package Store). Closing for real estate and
> business scheduled for June 16th, 2015.

ECF No. 1 Exhibit A.

The terms of the Note required Ms. Kaur to repay Mr. Gill the principal amount of

$160,000, plus 15% compound per annum interest on that amount, for a total sum of

$321,817.15 on or before July 31, 2020 and set a default rate of 20% per annum. ECF No. 1

Exhibit A. Both parties agree that Ms. Kaur has never paid Mr. Gill in connection with the Note.

ECF No. 1 ¶ 10; ECF No. 4 ¶ 10. Pursuant to the terms of the Note, Mr. Gill alleges that Ms.

Kaur owes him the unpaid principal plus all unpaid interest, as well as the default on the

principal sum, which at the time of filing this case equaled $357,930.12. ECF No. 1 ¶ 15.

With respect to the $70,000 check, Mr. Gill claims that he provided this check to AGK on

the condition that AGK only deposit it if AGK needed the funds for startup costs. ECF No. 6 ¶ 3.

According to Mr. Gill, since AGK did not need the $70,000, AGK did not deposit the $70,000

check within the 180-day expiration period. *Id*.

Ms. Kaur provides a factually different story with regard to the funds at issue. Specifically, Ms. Kaur avers that Mr. Gill agreed to purchase a 15% shareholder interest in AGK for $245,000, and that the $175,000 wire payment to AGK was partial payment for these shares. ECF No. 4 Counter Claim ¶ 2, 3.  Ms. Kaur also maintains that the never-cashed $70,000 check was intended to be the remaining payment for Mr. Gill's shares, and that Mr. Gill told Ms. Kaur he would "make good," the check "shortly" but never did. ECF No. 4 Counter Claim ¶¶ 2, 3.

In response to these allegations, Mr. Gill contends that he purchased his 15% interest in AGK for $60,750, and in support of this assertion Mr. Gill has provided a copy of a May 2015 email from the Bank, which he argues shows that the Bank processed the SBA Loan transaction with Mr. Gill having a 15% shareholder interest in AGK worth $60,750. ECF No. 6 Answer to Counter Claim ¶ 2; ECF No 6 Exhibit B.

On June 16, 2015, AGK successfully acquired the SBA loan. ECF No. 48 at p. 2.

More than five years later, on March 2, 2021, Mr. Gill filed suit against Ms. Kaur for breach of contract alleging Ms. Kaur's failure to repay him pursuant to the terms of the Note. ECF No. 1 Exhibit A.  Ms. Kaur maintains that her signature on the Note was forged by Mr. Gill and that the first time she ever saw the Note was when it was filed as an exhibit in this case. ECF No. 35 Exhibit A, Defendant Avtar Kaur's Responses to Plaintiff's First Interrogatries [sic] No. 9. On August 12, 2021 Ms. Kaur testified in her deposition that she never signed the Note, and in support of her Response to Plaintiff's Motion for Summary Judgment she has provided an expert report opining that the signature on the Note is forged. ECF No. 35 Exhibit A, Defendant Avtar Kaur's Responses to Plaintiff's First Interrogatries [sic] No. 9; ECF No. 41 Exhibit A.

With regard to the $70,000 never-cashed check, Ms. Kaur argues that AGK has made multiple demands for the $70,000, but that Mr. Gill never paid the remaining $70,000 to AGK. ECF No. 4 Counterclaim ¶¶ 7, 9.  Ms. Kaur proposes that the breach of contract claim was brought against her in this case to "possibly… offset the claims AGK is making upon [] [Mr. Gill] for his repayment of the unpaid check for Seventy Thousand ($70,000) dollars." ECF No. 4 Counterclaim ¶ 11.

To combat Ms. Kaur's defense theory, Mr. Gill avers that AGK long ago released any claim it may or may not have had to the $70,000 pursuant to the terms of a Stock Purchase Agreement (SPA) dated November 30, 2017. ECF No. 6 at pp. 2-3. Specifically, the SPA documents the sale of Mr. Gill's 15% interest in AGK to Mr. Jatinder Singh for $1.00 (one dollar). ECF No. 6 Exhibit A.  The SPA is purportedly notarized and signed by all of AGK's shareholders—Mr. Gill, Mr. Jatinder Singh, Mr. Kuljinder Singh, and Defendant, Ms. Kaur. ECF No. 6 Exhibit A. In relevant part, the SPA provides,

> **Seller's Release of Buyer:** Upon the Competition of the transaction contemplated herein this Agreement, Buyer, the Company [AGK], and any and all shareholders and directors of the Company [AGK] dismiss, release and forever discharge Seller from any and all claims, demands causes of action, suits sums of money, damages and judgment whatsoever whether known or unknown which have ever had, now has or may or might in the future Buyer, the Company [AGK], and/or any and all shareholders and directors of the company have against Seller, arising out of or in connection with the operation of the Company [AGK] including buy not limited to any local, county, state or federal taxes now due or due in the future.

> **Buyer's Release of Seller:** Upon the completion of the transaction contemplated herein this Agreement, Buyer, the Company [AGK], and any and all shareholders and directors of the Company [AGK], dismiss, release and forever discharge Seller from any and all claims, demands [sic] causes of action, suits [sic] sums of money, damages, and judgment whatsoever whether known or unknown which have ever had, now has or may or might in the future Buyer, the Company [AGK] and/or any and all shareholders and directors of the Company have against Seller, arising out of or in connection with the operation of the Company including but

not limited to any local, county, state, or federal taxes now due or due in the future.

(ECF 6 Exhibit A).

Mr. Gill has provided AGK board minutes documenting the sale of Mr. Gill's 15% interest in AGK to Mr. Kuljinder Singh that also appear to be signed by Mr. Gill, Ms. Kaur, Mr. Jatinder Singh and Mr. Kuljinder Singh. ECF No. 6 Exhibit A.

Initially, Ms. Kaur's fraud claim included a claim for the $70,000, but on September 2, 2021, the parties stipulated to dismiss all claims for damages relating to or arising from the $70,000 check. ECF No. 28 Stipulation ¶ 1; ECF No. 4 ¶ 5. The facts surrounding the $70,000 remain relevant, however, insofar as they help prove or disprove the purpose of Mr. Gill's wire payments to AGK's bank account in June 2015 and relatedly, whether the Note is a forgery. ECF No. 4 ¶ 5.

Although there are clearly facts in dispute as to whether the Note is legitimate and the circumstances surrounding Mr. Gill's transfer of $175,000 to AGK's bank account in June 2015, when considering the facts in the light most favorable to Defendant Kaur, as a matter of law, Defendant's counterclaims for fraud and attorney's fees cannot withstand summary judgment because no reasonable trier of fact could find for Ms. Kaur.

## II.    <u>STANDARD OF REVIEW</u>

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012)

(quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is

"material" if it "might affect the outcome of the suit under the governing law." *Anderson v.*

*Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). There is a genuine issue of material fact if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

      The party moving for summary judgment has the initial burden "of informing the district

court of the basis for its motion, and identifying those portions of the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this

burden, the non-moving party must counter with "'specific facts showing that there is a genuine

issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

(citation omitted); *see also* Fed. R. Civ. P. 56(c)

      The non-movant must show more than the "mere existence of a scintilla of evidence" for

elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252

(1986). The non-movant opposing a motion for summary judgment may not "rely merely upon

bare assertions, conclusory allegations or suspicions." *See Fireman's Ins. Co. v. DuFresne*, 676

F.2d 965, 969 (3d Cir. 1982). Additionally, the non-moving party "cannot rely on unsupported

allegations, but must go beyond pleadings and provide some evidence that would show that there

exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).

Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual

dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

When determining the existence of a genuine issues of material fact, the court must "examine the evidence of record in the light most favorable to the party opposing summary judgment and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court need only decide whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

## III.   <u>DISCUSSION</u>

### *Choice of Law*

Although Ms. Kaur largely bases her counterclaims and arguments against summary judgment of those counterclaims in Pennsylvania law, she does not concede that it is the correct substantive law. ECF 41 FN 1. Ms. Kaur proposes, in a footnote, that instead "federal law may apply to certain substantive issues," or that Georgia law "also has a strong interest in the substantive claims present in this lawsuit" because Ms. Kaur is a resident of Georgia and AGK is incorporated in Georgia. ECF 41 FN 1. Thus, as a threshold issue, this Court addresses the choice of law question and concludes Pennsylvania law is the appropriate law for the reasons stated below.

Generally, when conducting a "choice-of-law analysis" courts do so pursuant to "the choice-of-law rules of the forum state." *Melmark, Inc. v. Schutt by & Through Schutt*, 651 Pa. 714, 727

(2019); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under Pennsylvania's choice-of-law rules, courts must begin their analysis by considering whether "'a true conflict' exists between the two states…because in some instances the purported conflict is ultimately revealed to be a 'false conflict' –meaning that the laws of both states would produce the same result." *Melmark, Inc.* 651 Pa. 727. "'A true conflict between states' laws occurs when the governmental interests of both jurisdictions would be impaired if their law were not applied… if a true conflict is found, then a court engaging in a choice-of-law analysis must determine which state has the greater interest in the application of its law." *McDonald v. Whitewater Challengers, Inc*., 2015 PA Super 104, 116 A.3d 99, 319 Ed. Law Rep. 411 (2015).

As outlined in more detail below with respect to each counterclaim, Ms. Kaur has *not*, identified any Georgia or federal law that would provide bases for her counterclaims and lead to a different outcome than Pennsylvania law, nor does Ms. Kaur provide any argument as to why Pennsylvania law is inapplicable. Further, not only does Ms. Kaur fail to identify any true conflict of law, but this Court has also been unable to independently identify any true conflict of law or any basis on which federal law would preempt the application of state law. Accordingly, this Court finds that with respect to Ms. Kaur's counterclaims, Pennsylvania law is the correct substantive law for this Court to apply, and that pursuant to Pennsylvania law Plaintiff Gill is entitled to summary judgment as to both of Defendant Kaur's counterclaims.

### Counterclaim Count I: Fraud

Ms. Kaur's first counterclaim for fraud alleges that the Note underlying Mr. Gill's breach of contract claim is fraudulent. Ms. Kaur argues that Mr. Gill "fabricated the false promissory note," that the signature on the Note is forged because according to her she "never signed the promissory note," and "never received any [] funds from [Mr. Gill]" in relation to the Note. ECF

No. 4 Counterclaim ¶ 10, 11. Ms. Kaur also speculates that Mr. Gill's breach of contract claim involving the Note, was brought against her to "possibly…offset the claims AGK is making upon him [Mr. Gill] for his repayment of the unpaid check for Seventy Thousand ($70,000) dollars." ECF No. 4 Counterclaim ¶ 11.

Under Pennsylvania law, "[t]he essence of fraud is a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim." *Presbyterian Med. Ctr. v. Budd*, 832 A.2d 1066, 1072 (2003).  Accordingly, common law fraud consists of the following six elements: "(1) [a] representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance." *7-Eleven, Inc. v. Upadhyaya*, 926 F. Supp. 2d 614, 626 (E.D. Pa. 2013) (quoting *Bortz v. Noon*, 729 A.2d 555 (Pa. 1999). "The burden of proving fraud must be established by clear and convincing evidence and rests with the party alleging it," meaning that at trial, Ms. Kaur would have the burden of proving each element of her common law fraud claim by clear and convincing evidence. *Rohm & Haas Co. v. Cont'l Cas. Co.*, 781 A.2d 1172, 1179 (Pa. 2001).

"'Clear and convincing evidence' requires 'evidence that is so clear, direct, weighty, and convincing as to enable the [fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" *Walters v. McIlvee* , 248 A.3d 508 (Pa. Super. Ct. 2021) (quoting *Rohm & Haas Co. v. Cont'l Cas. Co.*, 781 A.2d 1172 (Pa. 2001)). "For the evidence to be clear and convincing, the witnesses must be credible. This means that the witnesses must both distinctly remember the facts to which they testify, and narrate the details exactly. If the witness testimony fails to meet this exacting standard, an action for fraud cannot be maintained." 7-

10

Eleven, Inc., 926 F. Supp. 2d 626–27 (E.D. Pa. 2013). Despite this high evidentiary standard, however, elements of fraud may be proven by circumstantial evidence because "fraud can rarely if ever be shown by direct proof," as it is generally done "surreptitiously with every effort usually made to conceal the truth of what is being done." *Rohm & Haas Co.*, 781 A.2d 1172 (quoting *Shechter v. Shechter*, 366 Pa. 30, 76 (1950)).

Ms. Kaur's fraud claim is based on her assertion that the Note is a forgery, and while there is clearly a dispute of fact as to whether or not the Note is fabricated and whether or not signature on the Note is legitimate, those allegation alone cannot carry Ms. Kaur's counterclaim of fraud forward past summary judgment.[3,4] Specifically, Ms. Kaur has offered no evidence alleging her reliance—justifiable or not—on the Note nor any facts that show an injury that was *proximately caused* by such reliance. *See Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 137 (3d Cir. 2005) ("a common law fraud claim [in Pennsylvania] requires a plaintiff to prove actual reliance."); *Scott v. LTS Builders LLC*, No. 1:10-CV-0581, 2012 WL 5207456, at *5 (M.D. Pa. Oct. 22, 2012) ("Justifiable reliance requires reliance on a misrepresentation by the defendant…").

---

[3] Both parties agree that under Pennsylvania law, there is no independent civil cause of action for forgery. ECF No. 41 at p. 5.  *See also Page v. Doyle*, No. CV 18-609, 2018 WL 2976374, at *5 (E.D. Pa. June 12, 2018) (quoting *Robinson v. Coyle*, No. 700 MDA 2014, 2015 WL 6159415, at *5 (Pa. Super. Ct. Apr. 28, 2015)) ("[n]o private civil cause of action for forgery exists in Pennsylvania.").

[4] Ms. Kaur also argues that despite no civil cause of action for forgery existing under Pennsylvania law, she can still recover pursuant to 1 Pa. C.S. § 1929 and the fact that forgery is a crime in Pennsylvania. ECF No. 41 at p. 5. Specifically, 1 Pa. C.S. § 1929 provides that "[t]he provision in any statute for a penalty or forfeiture for its violation shall not be construed to deprive an injured person of the right to recover from the offender damages sustained by reason of the violation of such statute." While the statute protects a person's right to bring a civil cause of action against a defendant who faces criminal action for the same conduct, it has not been construed to create a civil cause of action "absent a specific statute authorizing such actions," and thus this Court finds Ms. Kaur's argument is without merit. *Alfred M. Lutheran Distributors, Inc. v. A.P. Weilersbacher, Inc.*, 650 A.2d 83, 437 Pa. Super. 391, Super.1994, *appeal denied* 658 A.2d 791, 540 Pa. 627.

Thus, even if Ms. Kaur were able to prove at trial through clear and convincing evidence that the Note was a fraudulent misrepresentation made by Mr. Gill,[5] no reasonable trier of fact could find that Ms. Kaur justifiably relied on the forged Note to her detriment because there is no evidence at all from which to draw this inference. By Ms. Kaur's own account, the first time she laid eyes on the Note was "[i]n a forged-signature condition when it was attached as an exhibit to Plaintiff's Complaint." ECF No. 35 Exhibit A, Defendant Avtar Kaur's Responses to Plaintiff's First Interrogatries [sic] No. 9. In terms of an injury, Ms. Kaur does assert that she has been "damaged by Plaintiff's fraud, and by the bringing of this totally unfounded action in bad faith in such amounts as will be shown at time of trial," but does not offer any facts as to how Ms. Kaur was damaged in any way due to her *reliance* on the alleged misrepresentation—the Note that Ms. Kaur contends is a forgery. ECF No. 4 Counterclaim ¶ 12.

Parenthetically, Ms. Kaur's counterclaim would also fail to survive summary judgment under Georgia law for the same reason it failed under Pennsylvania law: namely that Ms. Kaur has not produced *any* evidence to show justifiable reliance or damage caused by that reliance.[6]

### Counterclaim Count II: Attorney's Fees

---

[5] In light of Ms. Kaur's failure to present *any* facts probative of at least two of the essential elements of common law fraud—justifiable reliance and an injury proximately caused by that reliance—this Court need not reach a finding as to whether Ms. Kaur has provided facts sufficient to withstand summary judgment as to the remaining elements of fraud. It is worth noting, however, that the Court is mindful of the clear and convincing evidence standard for common law fraud claims and that the *only* evidence Ms. Kaur has presented to support her contention that the Note is a forgery is her own assertion that she never signed it and an expert opinion analyzing the signature on the note and concluding it is a forged signature. *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 595 (E.D. Pa. 1999) ("[t]he mere presence of an expert opinion supporting the non-moving party's position does not necessarily defeat a summary judgement motion; rather, there must be sufficient facts in the record to validate that opinion."); *See, e.g., Advo, Inc. v. Philadelphia Newspapers, Inc.,* 51 F.3d 1191, 1198–99 (3d Cir.1995) (explaining a plaintiff cannot survive summary judgment unless it can produce more than a "scintilla" of factual support for their theory of legal recovery.)

[6] In Georgia, fraud requires five elements: (1) a false representation by the defendant; (2) with scienter, or knowledge of the falsity; (3) with intent to deceive the plaintiff or to induce the plaintiff into acting or refraining from acting; (4) on which the plaintiff justifiably relied; (5) with the proximate cause of damages to the plaintiff. *Prince Heaton Enters. v. Buffalo's Franchise Concepts, Inc.*, 117 F. Supp. 2d 1357, 1360 (N.D. Ga. 2000) (citations omitted).

Ms. Kaur also asserts a counterclaim for attorney's fees on the grounds that Mr. Gill "acted in bad faith, [has] been stubbornly litigious and has caused the Defendant unnecessary trouble and expense thereby entitling Plaintiff to recovery of its reasonable expenses of litigation…" and that "Fed. R. Civ. P. 54(d)(2), 1 Pa. C.S. § 1929, and O.C.G.A. § 13-6-11 are all potentially applicable statutes that authorize…the imposition of [Ms.] Kaur's attorneys' [sic] fees and legal expenses against [Mr.] Gill."  ECF No. 4 Counterclaim ¶ 14; ECF No. 41 at p. 9. For the reasons set forth below, Ms. Kaur's second counterclaim fails to survive Plaintiff's Motion for Summary Judgment. ECF No. 35.

With respect to attorney's fees, Pennsylvania has adopted the "American Rule," which "states that a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties or some other established exception." [7] *Mosaica Acad. Charter Sch. v. Com. Dep't of Educ.*, 572 Pa. 191, 206–07 (2002); *see also Fox v. Vice*, 563 U.S. 826 (2011) ("[The American Rule] generally requires each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses."). "In Pennsylvania, the American Rule is embodied in 42 Pa.C.S §1726(a)(1). *Mosaica Acad. Charter Sch. v. Com. Dep't of Educ.*, 572 Pa. 191, 206–07 (2002); *see also Petow v. Warehime*, 996 A.2d 1083, 1087-88 (Pa. Super 2010).

Ms. Kaur has not put forward any facts or legal theory under which attorney's fees would be granted under Pennsylvania law. Ms. Kaur does not allege the parties have made any

---

[7] Pennsylvania recognizes several public policy-based exceptions to the American Rule, that have been "generally enacted where the legislature wishes to encourage potential plaintiffs to seek vindication of important rights and to deter defendants from conduct violating those rights." *Krassnoski v. Rosey*, 454 Pa. Super. Ct. 78, 83 (1996); *see e.g.*, 23 Pa.C.S. § 6108(a)(8) (allowing attorney's fees to be awarded to the prevailing party to help deter further abuse of plaintiff or minor child); 54 Pa. C.S. §1125 (allowing for attorney's fees in trademark infringement cases in which a party committed wrongful acts in bad faith).

agreement in relation to attorney's fees. Additionally, the Pennsylvania statute that Ms. Kaur cites in support of her counterclaim for attorney's fees, 1 Pa. C.S. § 1929, does not create an explicit exception to Pennsylvania's general bar on attorney's fees. Rather, 1 Pa. C.S. § 1929 provides that "[t]he provision in any statute for a penalty or forfeiture for its violation shall not be construed to deprive an injured person of the right to recover from the offender damages sustained by reason of the violation of such statute." Defendant Kaur has identified no case law that identifies this statute as a pathway to attorney's fees based in bad faith nor can the Court read this statute as the necessary "express statutory authorization" for attorney's fees. *Mosaica Acad. Charter Sch. v. Com. Dep't of Educ.*, 572 Pa. 191, 206–07 (2002).

Finally, neither the Georgia nor federal statute cited by Defendant Kaur provide a basis for the recovery of attorney's fees in this case. Specifically, while Georgia law allows for recovery of attorney's fees when a party has "acted in bad faith" or "has been stubbornly litigious" under O.C.G.A. 13-6-11, "[a] plaintiff-in-counterclaim **cannot recover under OCGA § 13-6-11 unless [they] prevail[] on [their] independent [counter]claim.**" *SRM Grp., Inc. v. Travelers Prop. Cas. Co. of Am.*, 308 Ga. 404, 406 (2020) (emphasis added). Thus, under Georgia law because Ms. Kaur's first counterclaim for fraud fails to withstand summary judgment, she cannot maintain an independent claim for attorney's fees. Likewise, Fed. R. Civ. P. 54(d)(2), does not provide an independent basis for Ms. Kaur's counterclaim for attorney's fees. Instead, Fed. R. Civ. P. 54(d)(2), is a procedural rule related to attorney's fees; it provides that "[a] claim for attorney's fees…must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages…" Fed. R. Civ. P. 54(d)(2). This purely procedural does not creates an *independent* statutory substantive right for attorney's fees, and moreover, its text explicitly requires that a person moving for attorney's fees pursuant to Fed. R.

Civ. P. 54(d)(2), "specify the judgment and the statute, rule, or other grounds entitling the movant to the award," which, as explained above, Ms. Kaur has failed to do. Fed. R. Civ. P. 54(d)(2)(B)(ii). Thus, as a matter of law, Ms. Kaur has failed to assert facts sufficient to establish a claim for attorney's fees and her second counterclaim is unsustainable.

## IV.    **CONCLUSION**

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaims (ECF No. 35) is hereby **GRANTED**. An appropriate order follows.

**DATED:**  November 30, 2021                    **BY THE COURT:**

/s/***Chad F. Kenney***

**CHAD F. KENNEY, JUDGE**